IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOSHUA ASANE,<br><br>   *Plaintiff*,<br><br>  v.<br><br>THE VISITORS OF NORFOLK STATE UNIVERSITY, NORFOLK STATE UNIVERSITY and BEVERLY BOONE HARRIS in her official and individual capacities,<br><br>   *Defendants*. | Civil Action No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

COMES NOW, Plaintiff JOSHUA ASANE ("Mr. Asane"), by and through his undersigned counsel, and hereby complains and alleges against the above-named Defendants, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

**PARTIES**

1. Plaintiff, Joshua Asane, is currently a resident of the State of Virginia.

2. Defendant, the Visitors of Norfolk State University is a public corporation established by Virginia Code §§ 23.1-1900 as the governing body for Defendant Norfolk State University (collectively, "NSU"), a public state university located in Norfolk, Virginia.

3. Defendant Beverly Boone Harris is a resident of the state of Virginia and was at all times the Director of NSU's Office of Accessibility Services and International Students ("OASIS") and the Primary Designated School Official of NSU, tasked with serving as an intermediary between student visa holders and U.S. Citizenship and Immigration Services ("USCIS").

4. At all times relevant hereto, and in all actions described herein, Defendants' actions took place in Norfolk, Virginia.

1

## JURISDICTION & VENUE

5. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question), as there exist claims based upon 42 U.S.C. § 1983. This Court has personal jurisdiction over the parties because, *inter alia*, Defendants are located in the Eastern District of Virginia.

6. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district, and Defendants are located in this district.

7. Costs and attorney's fees are sought.

## GENERAL FACTUAL ALLEGATIONS

8. Joshua Asane is a Ghanaian citizen and was admitted as a doctoral student in the Material Science and Engineering Program (the "Program") at Norfolk State University in 2016.

9. Foreign nationals seeking to study in non-vocational academic programs in the United States are required to obtain an F-1 student visa unless they otherwise have legal status enabling them to remain in the United States.

10. Mr. Asane initially entered the United States on a B-2 visitor visa. In July 2016, NSU issued Mr. Asane an I-20, Certificate of Eligibility for Nonimmigrant Student Status, showing that he was eligible to obtain an F-1 visa.

11. However, in or about 2017, Mr. Asane subsequently submitted an I-485, Application to Register Permanent Residence or Adjust Status, which USCIS confirmed was received on January 3, 2018. Based on his pending application, he applied for and received an Employment Authorization Document ("EAD"), enabling him to work in the United States, including as a graduate assistant in the Program.

12. Applicants with pending I-485s have legal status to remain in the United States and are not required to possess a student visa to attend a college or university.

13. Accordingly, Mr. Asane did not need to obtain an F-1 visa. NSU was aware Mr. Asane had a pending I-485 and thus did not need to obtain an F-1 visa to attend NSU.

14. Mr. Asane successfully completed all coursework and research in the Program for his Ph.D. between 2016 and 2021.

15. Each year, NSU offered Mr. Asane a contract for employment as a graduate assistant. During the 2020-2021 school year, Mr. Asane again entered into a contract for a graduate assistantship with NSU, which provided him with funding and a stipend and was to continue through the end of the year, provided he continued to meet eligibility, enrollment, registration and qualification requirements.

16. By February 2021, Mr. Asane had largely completed his thesis dissertation, the last academic requirement prior to receiving his Ph.D.

17. In early February 2021, Mr. Asane received an email from Dr. Karen Hills Pruden, Chief Human Resources Office at NSU, stating that NSU required additional information to ensure his Form I-9 was compliant, and if they did not receive it within five business days, his employment as a graduate assistant would be terminated. The Form I-9 serves to verify eligibility to work in the U.S.

18. Mr. Asane promptly responded providing the requested information and proof of his current EAD, which was sufficient to satisfy the requirements of the I-9 and show he was eligible to work.

19. Then, at 4:34 p.m. on February 11, 2021, Mr. Asane received an email from Dr. Beverly Boone Harris, the Director of OASIS and Primary Designated School Official of NSU, tasked with serving as an intermediary between student visa holders and USCIS. Dr. Boone Harris stated that a review of his International Student Service file showed that there was no evidence he

ever applied for or was approved for a change in his immigration statutes from a B-2 visitor visa to an F-1 student visa.

20. She stated that he had five business days to provide documentation establishing his approved change of status to an F-1 visa and, if he did not, she would terminate his record in Student and Exchange Visitor Information System ("SEVIS"), which is the system schools use to report information regarding students on F-1 visas.

21. Mr. Asane responded immediately, at 7:30 a.m. the following morning, confirming for Dr. Boone Harris that he had a pending I-485, which would have made clear that he did not require an F-1 visa to remain at NSU, and attaching proof of both the pending application and his employment authorization.

22. Mr. Asane followed up on February 13, 2021, further explaining that he did not change his visa status from B-2 to F-1 because he had the pending family based I-485, upon which basis he was issued a renewable EAD. He noted that during his interview with USCIS for the I-485, he presented both the letter Dr. Boone Harris had presented for him in support of a change in status from a B-2 visa to an F-1, and the I-20 issued by NSU, and USCIS informed him that he was not required to change his status to remain a student. He again attached documentation supporting his lawful status.

23. On February 18, 2021, Dr. Boone Harris emailed Mr. Asane to inform him that he had failed to provide documentation "establishing [his] approved change of status" in the United States and his SEVIS record was terminated for failure to file a change of status to an F-1 visa. Because Mr. Asane had a pending I-485 application, however, he was not required to maintain his F-1 visa and he remained eligible to enroll in NSU.

4

24. On March 19, 2021, Mr. Asane successfully defended and passed his dissertation, the last academic requirement for his degree. Shortly thereafter, on March 31, 2021, he applied for graduation at the end of the semester. The application for graduation is an administrative, not academic, requirement.

25. On April 12, 2021, just a few weeks prior to graduation but nearly two months after Dr. Boone Harris's email, Dr. George Miller, Dean, notified Mr. Asane that because OASIS terminated his record in SEVIS on February 18, 2021, he was not eligible to matriculate as an NSU student as of that date. Dean Miller's notice stated that, effective immediately, Mr. Asane's academic program would be closed and he would be withdrawn from his courses.

26. NSU's dismissal of Mr. Asane was based entirely on Dr. Boone Harris's termination of his SEVIS record and, upon information and belief, her insistence that Mr. Asane was not eligible to remain at NSU because he did not have an F-1 visa.

27. Mr. Asane was dismissed from the Program and NSU after he had completed all of his academic requirements and mere weeks before obtaining his Ph.D.

28. His dismissal additionally terminated his graduate assistantship, notwithstanding that Mr. Asane had met and continued to meet all requirements in the contract, including eligibility for enrollment and employment.

29. Around the same time, Mr. Asane submitted an I-360 petition, with supporting documentation, which is utilized to obtain classification as eligible under certain provisions of the Violence Against Women Act ("VAWA"), enabling pursuit of permanent residence on that basis. USCIS confirmed the petition was received on May 6, 2021, and on August 11, 2021, USCIS issued a determination that the petition was reviewed and found to establish a *prima facie* case for classification under VAWA.

30. Mr. Asane also submitted another I-485, seeking permanent residence status under the provisions of VAWA, which USCIS confirmed it received on July 30, 2021.

31. Mr. Asane provided this additional documentation to NSU, including Dr. Boone Harris, showing he continued to have legal status to remain in the United States and thus did not require any further visa. Upon inspection of the additional documentation, he was told by Dr. Michael Keeve, Dean, College of Science, Engineering, and Technology to reapply to the Program.

32. Mr. Asane reapplied, and NSU readmitted him based on his pending I-485 application. His readmission was not contingent on obtaining a visa and, as before, his pending I-485 entitled him to enroll without obtaining any further visa.

33. On January 3, 2022, he received the formal letter informing him he was readmitted to the Program for the spring 2022 semester, along with an email from Dr. Sam-Shajing Sun, MSE Graduate Program Coordinator outlining the steps for him to file his Ph.D. graduation application for that semester.

34. However, shortly thereafter, on January 5, 2022, Dr. Sun called Mr. Asane and informed him that his registration had been blocked by Dr. Boone Harris. He was not provided any written notice of the block or reason for it.

35. Mr. Asane emailed Dr. Sun the same documentation previously provided to NSU that had resulted in their directive to apply for, and ultimate grant of, re-admission. Dr. Sun indicated there was nothing he could do.

36. Dr. Boone Harris's ability to block Mr. Asane's registration, and thus his inability to obtain his Ph.D., was not subject to review or appeal, leaving Mr. Asane with no options.

37. As a result of the block placed by Dr. Boone Harris, Mr. Asane was unable to register as required to receive his Ph.D. NSU subsequently refused to communicate with Mr. Asane and has not provided any written notice or explanation of why his readmission is being blocked.

38. Mr. Asane's counsel contacted NSU's general counsel on January 31, 2022, outlining the sequence of events, Mr. Asane's legal status in the United States based on a pending I-485, and NSU's wrongful and unjust actions.

39. Despite this, and several follow ups, NSU has failed to remove the block, explain why it remains, or otherwise communicate with Mr. Asane. Mr. Asane has not been provided any avenue for appeal.

## FIRST CAUSE OF ACTION

### CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
### (DENIAL OF PROCEDURAL DUE PROCESS)

40. Each of the allegations set forth in paragraphs 1 through 39, inclusive, are hereby incorporated by this reference as if realleged fully herein.

41. All persons residing in the United States are afforded the right to substantive due process through the Fourteenth Amendment of the United States Constitution.

42. The protections of the Due Process clause of the Fourteenth Amendment bar the government from taking arbitrary action that results in the deprivation of a person's interest without reasonable justification.

43. Mr. Asane, through his enrollment contracts with NSU and NSU's policies, had a property interest in continued enrollment in NSU provided he possessed an immigration status making him eligible for enrollment. Mr. Asane had such status by virtue of his pending I-485 application.

44.     Mr. Asane also had a property interest in his graduate assistantship for the spring 2021 semester, pursuant to his contract with NSU for such assistantship.

45.     Mr. Asane further had a property interest in being awarded his Ph.D., as he had completed all academic requirements for graduation with the degree and submitted his application for graduation.

46.     Mr. Asane, through NSU's January 3, 2022 letter granting him readmission without contingency and NSU's policies, rules and regulations, which do not condition registration following readmission on approval by OASIS, Dr. Boone Harris or any other status for students lawfully in the United States, had a property interest in his readmission and registration in NSU.

47.     Prior to depriving Mr. Asane of this property right, NSU was required to provide him with, at minimum, notice and a meaningful opportunity to respond.  Courts have held that where a student is being dismissed from an academic program, due process requires a hearing.

48.     NSU denied Mr. Asane procedural due process when it dismissed him based on Dr. Boone Harris's termination of his SEVIS record and her determination he was ineligible to maintain enrollment, despite the fact that he remained eligible for enrollment in NSU.  Mr. Asane had provided proof of his eligibility to Dr. Boone Harris, who refused to consider it because it was not evidence of an F-1 visa.

49.     Dr. Boone Harris, though informing Mr. Asane she was terminating his SEVIS record, did not inform him she would assert to NSU that he was ineligible to remain enrolled or take action that would result in his dismissal.  Mr. Asane was accordingly denied both notice of and meaningful opportunity to respond to Dr. Boone Harris's determination that he was ineligible to remain and his dismissal.

50. NSU further denied Mr. Asane procedural due process when it failed to award him his Ph.D. without any opportunity to respond, though he had completed all program requirements and remained eligible to remain in the Program through the award of his degree.

51. Finally, NSU denied Mr. Asane procedural due process when it allowed Dr. Boone Harris to block his registration, despite his valid readmission; failed to provide him with any explanation of the reason for the block and failed to provide him with a meaningful opportunity to respond.

52. Dr. Boone Harris was charged by NSU with the responsibility and power to determine eligibility for enrollment and registration for students who were neither U.S. citizens nor green card holders, and her determination was unreviewable and not subject to appeal.

53. In terminating Mr. Asane's SEVIS record, determining he was ineligible to remain enrolled and thus must be dismissed, and blocking his registration after readmission, Dr. Boone Harris was acting under color of law.

54. Dr. Boone Harris's official and individual actions exhibit deliberate indifference and/or reckless disregard for the constitutional rights of Mr. Asane.

55. As a proximate result of the illegal, arbitrary and capricious acts of Defendant Boone Harris, Mr. Asane has suffered and continues to suffer damages academically, financially, emotionally, mentally and psychologically. Accordingly, Mr. Asane is entitled an award of compensatory damages from Dr. Boone Harris in her individual capacity in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS.

56. The acts, conduct and behavior of Dr. Boone Harris was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Mr. Asane is entitled to punitive

damages Dr. Boone Harris in her individual capacity in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

57. Mr. Asane is further entitled to injunctive relief allowing him to register in accordance with NSU's readmission of him so that he may receive his Ph.D.

58. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION

### *CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983*
### *(DENIAL OF SUBSTANTIVE DUE PROCESS)*
### Against all Defendants

59. Each of the allegations set forth in paragraphs 1 through 39, inclusive, are hereby incorporated by this reference as if realleged fully herein.

60. All persons residing in the United States are afforded the right to substantive due process through the Fourteenth Amendment of the United States Constitution.

61. The protections of the Substantive Due Process clause of the Fourteenth Amendment bar the government from taking arbitrary action that results in the deprivation of a person's interest without reasonable justification.

62. Mr. Asane, through his enrollment contracts with NSU and NSU's policies, had a property interest in continued enrollment in NSU provided he possessed an immigration status making him eligible for enrollment. Mr. Asane had such status by virtue of his pending I-485 application.

63. Mr. Asane had a property interest in his graduate assistantship for the spring 2021 semester, pursuant to his contract with NSU for such assistantship.

64. Mr. Asane further had a property interest in being awarded his Ph.D., as he had completed all academic requirements for graduation with the degree and submitted his application for graduation.

65. Mr. Asane, through NSU's January 3, 2022 letter granting him readmission without contingency and NSU's policies, rules and regulations, which do not condition enrollment following readmission on approval by OASIS, Dr. Boone Harris or any other status for students lawfully in the United States, had a property interest in his readmission and registration at NSU.

66. Dr. Boone Harris and NSU acted arbitrarily and capriciously when Dr. Boone Harris terminated Mr. Asane's SEVIS record and determined he was ineligible to remain enrolled because of his lack of an F-1 visa, leading to his dismissal from NSU and the termination of his graduate assistantship, despite the fact that Mr. Asane did not require an F-1 or any other visa to be eligible to enroll in NSU. Mr. Asane remained eligible and had provided proof to Dr. Boone Harris that he was eligible to remain enrolled through his pending I-485 application.

67. NSU further acted arbitrarily and capriciously when it failed to award him his Ph.D. though he had completed all program requirements and remained eligible to remain in the Program through the award of his degree.

68. Finally, NSU and Dr. Boone Harris acted arbitrarily and capriciously when Dr. Boone Harris blocked and was permitted to block Mr. Asane's registration, despite his valid readmission and his eligibility to enroll due to his pending I-485 application.

69. Dr. Boone Harris was charged with the responsibility and power to determine eligibility for enrollment for students who were neither U.S. citizens nor green card holders, and her determination was unreviewable and not subject to appeal.

70. Further, in terminating Mr. Asane's SEVIS record, determining he was ineligible to remain enrolled and thus must be dismissed, and blocking his registration after readmission, Dr. Boone Harris was acting under color of law.

71. Dr. Boone Harris's official and individual actions exhibit deliberate indifference and/or reckless disregard for the constitutional rights of Mr. Asane.

72. As a proximate result of the illegal, arbitrary and capricious acts of Dr. Boone Harris, Mr. Asane has suffered and continues to suffer damages academically, financially, and emotionally. Accordingly, Mr. Asane is entitled an award of compensatory damages from Dr. Boone Harris in her individual capacity in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS.

73. The acts, conduct and behavior of Dr. Boone Harris was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Mr. Asane is entitled to punitive damages Dr. Boone Harris in her individual capacity in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

74. Mr. Asane is further entitled to injunctive relief allowing him to register in accordance with NSU's readmission of him so that he may receive his Ph.D.

75. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

### THIRD CAUSE OF ACTION
*CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983*
*(EQUAL PROTECTION)*

76. Each of the allegations set forth in paragraphs 1 through 39, inclusive, are hereby incorporated by this reference as if realleged fully herein.

77. All persons residing in the United States are protected by the Equal Protection Clause of the Fourteenth Amendment, which bars the government from intentional discrimination, including on the basis of national origin, or through "class of one" discrimination, when the intentional discriminatory treatment lacks any rational basis and there was improper motive.

78. Students with pending I-485 applications were eligible to enroll at NSU without any additional visa. Pursuant to federal law, an F-1 or other visa was only required only for those students who did not otherwise have lawful status to remain in the United States. Determination of eligibility for enrollment is based on the law and objective rules and policies, not any subjective or discretionary assessment.

79. When Dr. Boone Harris determined Mr. Asane was not eligible to remain matriculated at NSU because he did not have an F-1 visa, NSU dismissed him based on Dr. Boone Harris's determination, and Dr. Boone Harris blocked his registration following readmission, all despite his pending I-485 application, which makes him eligible to enroll and remain enrolled at NSU, Dr. Boone Harris and NSU singled Mr. Asane out and treated him differently than similarly situated individuals without any rational basis.

80. Alternatively, NSU and Dr. Boone Harris determined Mr. Asane could not remain in the Program or register for the Program without an F-1 visa because of his national origin, despite the fact that an F-1 visa was not required for him to enroll or remain in the Program.

81. Defendant Boone Harris's official and individual actions exhibit deliberate indifference and/or reckless disregard for the constitutional rights of Mr. Asane.

82. As a proximate result of the illegal, arbitrary and capricious acts of Dr. Boone Harris, Mr. Asane has suffered and continues to suffer damages academically, financially, and emotionally. Accordingly, Mr. Asane is entitled an award of compensatory damages from Dr.

Boone Harris in her individual capacity in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS.

83. The acts, conduct and behavior of Dr. Boone Harris was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Mr. Asane is entitled to punitive damages from Dr. Boone Harris in her individual capacity in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

84. Mr. Asane is further entitled to injunctive relief allowing him to register in accordance with NSU's readmission of him, so that he may receive his Ph.D.

85. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

**FOURTH CAUSE OF ACTION**
*VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT*
*42 U.S.C. §§ 2000d, et seq.*
**Against Defendants NSU**

86. Each of the allegations set forth in paragraphs 1 through 39, inclusive, are hereby incorporated by this reference as if realleged fully herein.

87. NSU receives federal financial assistance, including through the receipt of federal student loans and grants.

88. Title VI prohibits recipients of federal financial assistance from discriminating against individuals on the basis of national origin in any of their programs or activities.

89. Federal law only requires students who do not otherwise have legal status to remain in the United States to obtain student visas. Individuals with pending I-485 applications are not required to obtain student visas to enroll in academic programs.

90. Despite this, NSU and Dr. Boone Harris required Mr. Asane to prove he had obtained an F-1 visa and, when he could not, dismissed him from the Program, terminating his graduate assistantship and precluding him from obtaining his Ph.D.

91. This action was taken because Mr. Asane was a foreign national, and thus was based on his national origin.

92. As a result of Defendant NSU's actions, Mr. Asane is entitled to damages in an amount to be determined at trial, plus prejudgement interest, attorneys' fees, expenses, cost and disbursement.

93. In addition, Mr. Asane is entitled to injunctive relief allowing him to register in accordance with NSU's readmission of him so that he may receive his Ph.D.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Asane demands a jury trial for all issues in this matter.

## **RELIEF REQUESTED**

WHEREFORE, Mr. Asane prays that this Honorable Court enter judgment in his favor, and against the Defendants:  (a) for Injunctive Relief to reinstate Mr. Asane as a student in good standing at Norfolk State University and to permit him to register so as to receive his Ph.D.; (b) for compensatory damages from Defendant Boone Harris in her individual capacity in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (c) for punitive damages against Defendant Boone Harris in her individual capacity in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (d) for

///

///

compensatory damages against Defendant NSU for violations of Title VI; (e) for interest; (f) together with the costs and disbursements of this action and such other attorneys' fees, pursuant to 42 U.S.C. § 1988; and (g) further relief as justice requires.

DATED this 7th day of September, 2022.

                                            Respectfully Submitted,

*/s/ Diane P. Toscano*
Diane P. Toscano, Esq.
Virginia Bar No. 73478
TOSCANO LAW GROUP, P.C.
1244 Perimeter Parkway, Suite 443
Virginia Beach, Virginia 23454
Telephone: (757) 821-7972
Facsimile: (757) 903-0186
Email: diane@toscanolawgroup.com

        and

THE BACH LAW FIRM, LLC
Jason J. Bach
*Pro Hac Vice Admission Pending*
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email:  jbach@bachlawfirm.com
*Attorneys for Plaintiff*