UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JOSHUA ASANE,<br><br>    Plaintiff,<br><br>  v.<br><br>THE VISITORS OF NORFOLK STATE<br>UNIVERSITY, *et al.*,<br><br>    Defendants. | Civil No. 2:22cv377 |

## ORDER

Pending before the Court is a Motion to Dismiss (the "Motion") (ECF No. 12) brought by Defendants THE VISITORS OF NORFOLK STATE UNIVERSITY ("Visitors"), NORFOLK STATE UNIVERSITY ("NSU"),[1] and Dr. Beverly Boone Harris in her official and individual capacities. For the following reasons, Defendants' Motion (ECF No. 12) is **GRANTED**.

## I. BACKGROUND

When ruling on a motion to dismiss for failure to state a claim, courts accept a complaint's well-pled factual allegations as true and draw any reasonable inferences in favor of the plaintiff. *See, e.g.*, *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). The Court, however, is "not so bound with respect to [the complaint's]

---

[1] Defendants note that the correct corporate name of Norfolk State University is "The Visitors of Norfolk State University." Va. Code § 23.1-1900; *see* Mem. Supp. Mot. Dismiss at 1 n.1, ECF No. 13. The Court understands this to mean that Defendants Visitors and NSU are in fact the same entity.

legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Accordingly, the Court reviews the facts as alleged by Plaintiff Joshua Asane in the Complaint. *See* Compl. ¶¶ 8–39, ECF No. 1.

Plaintiff Joshua Asane is a Virginia resident and a Ghanaian citizen. *Id.* ¶¶ 1, 8. In 2016, he was admitted to NSU as a doctoral student in the Material Science and Engineering Program (the "Program"). *Id.* ¶ 8. Defendant Visitors is a public corporation established by Virginia Code § 23.1-1900 as the governing body for Defendant NSU, a public state university located in Norfolk, Virginia. *Id.* ¶ 2. Defendant Beverly Boone Harris is a Virginia resident and was the Director of NSU's Office of Accessibility Services and International Students ("OASIS") and the Primary Designated School Official of NSU, serving as an intermediary between student visa holders and U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 3.

Mr. Asane initially entered the United States on a B-2 visitor visa. *Id.* ¶ 10. In July 2016, NSU issued Mr. Asane an I-20, Certificate of Eligibility for Nonimmigrant Student Status, which showed that he was eligible to obtain an F-1 visa. *Id.* However, in or about 2017, Mr. Asane submitted an I-485, Application to Register Permanent Residence or Adjust Status and did not apply for an F-1 visa. *Id.* ¶ 11. USCIS confirmed receipt of the I-485 application on January 3, 2018. *Id.* Based on his pending I-485 application, he applied for and received an Employment Authorization Document ("EAD"), which enabled him to work in the United States. *Id.* NSU was aware that Mr. Asane had a pending I-485 application. *Id.* ¶ 13.

Mr. Asane successfully completed all coursework and research in the Program for his Ph.D. between 2016 and 2021. *Id.* ¶ 14. Each year, NSU also offered Mr. Asane a contract for employment as a graduate assistant. *Id.* ¶ 15. During the 2020–2021 school year, Mr. Asane again entered into a contract for a graduate assistantship with NSU, which provided him with funding and a stipend. *Id.* The contract was supposed to continue through the end of the year, provided that he continued to meet eligibility, enrollment, registration, and qualification requirements. *Id.* By February 2021, Mr. Asane had largely completed his thesis dissertation, the last academic requirement prior to receiving his Ph.D. *Id.* ¶ 16.

In early February 2021, Mr. Asane received an email from Dr. Karen Hills Pruden, the Chief Human Resources Officer at NSU, stating that NSU required additional information to ensure his Form I-9 was compliant and that his employment as a graduate assistant would be terminated if they did not receive the requested information within five business days. *Id.* ¶ 17. Mr. Asane responded with the requested information and proof of his current EAD. *Id.* ¶ 18. On February 11, 2021 at 4:34 pm, Mr. Asane received an email from Dr. Harris stating that a review of his International Student Service file showed that there was no evidence he ever applied for or was approved for a change in his immigration status from a B-2 visitor visa to an F-1 student visa. *Id.* ¶ 19. She stated that he had five business days to provide documentation establishing his approved change of status to an F-1 visa and that if he did not, she would terminate his record in the Student and Exchange Visitor Information System ("SEVIS"), the system that schools use to report information

3

regarding students on F-1 visas. *Id.* ¶ 20. Mr. Asane responded to Dr. Harris at 7:30 am the following morning to confirm that he had a pending I-485 and attached proof of the pending application and his employment authorization. *Id.* ¶ 21.

On February 13, 2021, Mr. Asane followed up on his email and further explained that he did not change his visa status from B-2 to F-1 because he had the pending family-based I-485, which was the basis of his renewable EAD. *Id.* ¶ 22. He noted that during his interview with USCIS for the I-485, he presented both the letter Dr. Harris had provided in support of changing from a B-2 visa to F-1 visa and the I-20 issued by NSU. *Id.* USCIS informed him that he was not required to change his status to remain a student. *Id.* He again attached documentation supporting his lawful status. *Id.* On February 18, 2021, Dr. Harris emailed Mr. Asane to inform him that he had failed to provide documentation "establishing [his] approved change of status" in the United States and that his SEVIS record was terminated for failure to file a change of status to an F-1 visa. *Id.* ¶ 23.

On March 19, 2021, Mr. Asane successfully defended and passed his dissertation, the last academic requirement for his degree. *Id.* ¶ 24. On March 31, 2021, he applied for graduation at the end of the semester. *Id.* The application for graduation was an administrative, not academic, requirement. *Id.* On April 12, 2021, just a few weeks prior to graduation but nearly two months after Dr. Harris' email, Dr. George Miller, Dean, notified Mr. Asane that because OASIS terminated his record in SEVIS on February 18, 2021, he was not eligible to matriculate as an NSU student as of that date. *Id.* ¶ 25. Dean Miller's notice stated that, effective immediately, Mr. Asane's

4

academic program would be closed and he would be withdrawn from his courses. *Id.*
NSU's dismissal of Mr. Asane was based entirely on Dr. Harris' termination of his
SEVIS record and, upon information and belief, her insistence that Mr. Asane was
not eligible to remain at NSU because he did not have an F-1 visa. *Id.* ¶ 26. Mr. Asane
was dismissed from the Program and NSU after he had completed all academic re-
quirements and mere weeks before obtaining his Ph.D. *Id.* ¶ 27. His dismissal also
terminated his graduate assistantship. *Id.* ¶ 28.

Around the same time as his dismissal, Mr. Asane submitted an I-360 petition
with supporting documentation. *Id.* ¶ 29. An I-360 petition includes special immigra-
tion status under certain provisions of the Violence Against Women Act (VAWA) that
provide a pathway for lawful permanent residence. *Id.*; *see* I-360, Petition for Amer-
asian, Widow(er), or Special Immigrant, USCIS, https://www.uscis.gov/i-360 (last up-
dated Mar. 31, 2023) (last visited Aug. 3, 2023). USCIS confirmed receipt of the peti-
tion on May 6, 2021. Compl. ¶ 29, ECF No. 1. On August 11, 2021, USCIS determined
that his I-360 petition established a *prima facie* case for classification under VAWA.
*Id.* Mr. Asane also submitted another I-485 seeking permanent residence status un-
der the provisions of VAWA. *Id.* ¶ 30. USCIS confirmed receipt of his I-485 application
on July 30, 2021. *Id.* Mr. Asane provided this additional documentation to NSU, in-
cluding Dr. Harris, to show that he continued to have legal status in the United States
and thus did not require any further visa. *Id.* ¶ 31.

Upon inspection of the additional documentation, Dr. Michael Keeve, Dean,
College of Science, Engineering, and Technology, told Mr. Asane to reapply to the

Program. *Id.* Mr. Asane reapplied, and NSU readmitted him based on his pending I-485 application. *Id.* ¶ 32. His readmission was not contingent on obtaining a visa. *Id.* On January 3, 2022, he received a formal letter informing him that he was readmitted to the Program for the spring 2022 semester and an email from Dr. Sam-Shajing Sun, the MSE Graduate Program Coordinator, outlining the steps to file his Ph.D. graduation application for that semester. *Id.* ¶ 33. However, on January 5, 2022, Dr. Sun called Mr. Asane and informed him that Dr. Harris had blocked Mr. Asane's registration. *Id.* ¶ 34. He did not receive any written notice of the block or the reason for it. *Id.* Mr. Asane emailed Dr. Sun the same documentation he previously provided to NSU that had resulted in their directive to apply for, and ultimate grant of, readmission. *Id.* ¶ 35. Dr. Sun indicated there was nothing he could do. *Id.* Dr. Harris' ability to block Mr. Asane's registration, and thus his inability to obtain his Ph.D., was not subject to review or appeal. *Id.* ¶ 36.

As a result of the block placed by Dr. Harris, Mr. Asane was unable to register as required to receive his Ph.D. *Id.* ¶ 37. NSU subsequently refused to communicate with Mr. Asane and has not provided any written notice or explanation of why his readmission is being blocked. *Id.* Mr. Asane's counsel contacted NSU's general counsel on January 31, 2022 outlining the sequence of events, Mr. Asane's legal status in the United States based on a pending I-485, and NSU's actions. *Id.* ¶ 38. Despite this communication and several follow-ups, NSU has failed to remove the block, explain why the block remains, or otherwise communicate with Mr. Asane. *Id.* ¶ 39. Mr. Asane has not been provided any avenue for appeal. *Id.*

On September 7, 2022, Plaintiff Asane filed a complaint against Defendants Visitors, NSU, and Harris alleging four claims: (1) Denial of Procedural Due Process, in violation of 42 U.S.C. § 1983; (2) Denial of Substantive Due Process, in violation of 42 U.S.C. § 1983; (3) Denial of Equal Protection, in violation of 42 U.S.C. § 1983; and (4) National Origin Discrimination, in violation of Title VI of the Civil Rights Act, 42 U.S.C. §§ 2000d, *et seq.* On October 17, 2022, Defendants Visitors, NSU, and Harris filed this Motion to Dismiss. ECF No. 12. Plaintiff Asane filed a Response in Opposition to Defendants' Motion to Dismiss on October 31, 2022. ECF No. 14. Defendants filed a Reply on November 7, 2022. ECF No. 15. The Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs, and denies Defendants' request for oral argument on the Motion (ECF No. 16). *See* E.D. Va. Local Civ. R. 7(J). The Motion is ripe for adjudication.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to seek dismissal based on "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing subject matter jurisdiction. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A Rule 12(b)(1) challenge may proceed as either a facial challenge, which asserts that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, which asserts that the jurisdictional allegations in the complaint are not true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "When a defendant makes a facial

challenge to subject matter jurisdiction, . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* Courts have construed a motion to dismiss based on Eleventh Amendment immunity as a facial challenge properly considered under Rule 12(b)(1). *See Abril v. Virginia*, 145 F.3d 182, 184 (4th Cir. 1998); *Tall v. Md. Dep't of Health and Mental Hygiene*, No. 15cv3811, 2016 WL 7491621, at *3–*4 (D. Md. Dec. 29, 2016).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An adequate claim requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Although the truth of the facts alleged is assumed, and the facts are taken in the light most favorable to the plaintiff, courts are not bound by "legal

conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

## III.   ANALYSIS

In support of the Motion to Dismiss, Defendants argue that (1) the Court lacks jurisdiction over Plaintiff's Section 1983 claims against NSU and Plaintiff's monetary claims against Dr. Harris; (2) Plaintiff does not plead a property interest to support his procedural and substantive due process claims; (3) Plaintiff does not plead facts showing that Dr. Harris discriminated against him because of his national origin; (4) Plaintiff fails to plead a claim for injunctive relief against Dr. Harris; and (5) Plaintiff

has not pled a claim for punitive damages. Mem. Supp. Mot. Dismiss at 11–17, ECF No. 13. The Court reviews the arguments with respect to each claim.

**A.    Eleventh Amendment immunity bars Plaintiff's Section 1983 due process and equal protection claims against Defendants Visitors and NSU.**

i.    Legal Standard

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity . . . against one of the United States . . . by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.[2] "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). A state's sovereign immunity extends to certain actions against state agents and state instrumentalities as well. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Stover v. Coll. of William and Mary in Va.*, --- F. Supp. 3d ---, No. 4:21cv150, 2022 WL 10585341, at *5 (E.D. Va. 2022).

ii.    Analysis

Here, Defendants argue that Plaintiff's Section 1983 claims should be dismissed because of Eleventh Amendment immunity. The Court agrees that these

---

[2] The doctrine of sovereign immunity enjoyed by the States existed prior to the ratification of the Constitution. *Alden v. Maine*, 527 U.S. 706, 728–29 (1999) ("The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principal . . . "); *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) ("Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states by citizens of other states.").

claims are barred with respect to Defendants Visitors and NSU. Virginia law provides that "[t]he board of visitors of Norfolk State University . . . is a corporation under the name and style of 'The Visitors of Norfolk State University' . . . at all times . . . under the control of the [Virginia] General Assembly." Va. Code § 23.1-1900. As a public institution of higher education, Defendants Visitors and NSU are instrumentalities of the Commonwealth of Virginia and afforded state sovereign immunity. *See Brown v. Porter*, 438 F. Supp. 3d 679, 682–83 (E.D. Va. 2020) (accepting report and recommendation dismissing Section 1983 due process claims against NSU and the Board of Visitors of NSU after finding that they are instrumentalities of Virginia and afforded sovereign immunity); *Earl v. Norfolk State Univ.*, No. 2:13cv148, 2014 WL 583972, at *4 (E.D. Va. Feb. 13, 2014) (dismissing age discrimination claims against NSU after finding that it is an instrumentality of Virginia and afforded sovereign immunity); *Stover*, 2022 WL 10585341, at *5 (dismissing Section 1983 due process and equal protection claims against the College of William & Mary after finding that it is an instrumentality of Virginia and afforded sovereign immunity). Accordingly, Counts I, II, and III are **DISMISSED** with respect to Defendants Visitors and NSU.

**B.    Plaintiff failed to sufficiently allege any property interest in support of his procedural due process claim.**

i.    Legal Standard

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. XIV amend. To establish a violation of procedural due process, a plaintiff must satisfy three elements: (1) a constitutionally cognizable life, liberty, or

property interest; (2) a deprivation of that interest caused by some form of state action; and (3) the procedures employed were constitutionally inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). The Constitution protects but does not create property interests. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). The "property interest must be more than a mere unilateral expectation of it or abstract need or desire for it." *Sheppard*, 993 F.3d at 239 (quoting *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011) and *Roth*, 408 U.S. at 577) (internal quotation marks omitted). There must be a "legitimate claim of entitlement to [a property interest]" that "may arise from state statutes, contracts, regulations, or policies." *Doe v. Alger*, 175 F. Supp. 3d 646, 656–57 (W.D. Va. 2016) (quoting *Roth*, 408 U.S. at 577) (internal quotation marks omitted).

ii.   <u>Analysis</u>

Here, Plaintiff raises four property interests in support of his procedural and substantive due process claims: (1) continued enrollment in NSU provided he possessed an immigration status making him eligible for enrollment; (2) graduate assistantship for the spring 2021 semester; (3) his Ph.D. for which he has completed all academic and application requirements; and (4) his readmission and registration in NSU. Compl. ¶¶ 43–46, ECF No. 1. Defendants argue that Plaintiff failed to allege any procedural due process violation because these four property interests are not

protected under procedural due process. This Court reviews each claimed property interest in turn.

*(1) Continued enrollment in NSU:* Plaintiff first alleges that he has a property interest in his continued enrollment at NSU. The Supreme Court has recognized a property right in public education where state statute mandates a free education. *Goss v. Lopez*, 419 U.S. 565, 573–74 (1975) (finding that high school students had legitimate claims of entitlement to a public education because the state extended the right to education and the right could not be withdrawn without fair procedures). However, there is no analogous Virginia statute providing for a property interest in continued enrollment in university. *See Sheppard v. Visitors of Va. State Univ.*, No. 3:18cv723, 2019 WL 6039953, at *4 (E.D. Va. Nov. 14, 2019). "Neither the Supreme Court nor the Fourth Circuit has held that a property interest exists in connection with higher education, categorically or specifically with regard to Virginia law." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 720–21 (E.D. Va. 2015).

Plaintiff instead cites to his enrollment contracts with NSU, NSU's policies and procedures, a letter from NSU informing him of his readmission, and an email from the Graduate Program Coordinator outlining steps for him to file his Ph.D. graduation that semester as the basis for his claimed property interest in continued enrollment and in readmission. Compl. ¶¶ 43, 46, ECF No. 1; Resp. Opp'n at 13, ECF No. 14. Courts have recognized that a university's policies and practices can form the basis of a constitutionally protected property interest. *See Perry v. Sindermann*, 408

13

U.S. 593, 599–603 (1972) (finding that the lack of a statute or contract provision did not necessarily mean there was no property interest in a professor's continued employment); *Doe v. Alger*, 175 F. Supp. 3d 646, 658 (W.D. Va. 2016) (finding that the plaintiff sufficiently pleaded the existence of school policies or procedures that created a protected property interest in continued enrollment). However, a review of Plaintiff's Complaint reveals that there are only bare references to NSU's contracts, policies, rules and regulations, and readmission email. *See* Compl. ¶¶ 43, 44, 46, ECF No. 1. Plaintiff does not cite to any specific provisions that provide for the claimed property interest in continued enrollment, nor provide the contents of the alleged contracts, policies, rules and regulations, or readmission email for the Court's review. These bare assertions are not factually sufficient to plead the existence of a property interest in continued enrollment. *See Doe v. Va. Polytechnic Inst. & State Univ.*, 617 F. Supp. 3d 412, 428–29 (W.D. Va. 2022) (finding that the plaintiff's allegations failed to state a property interest because he "d[id] not identify the 'various policies and customs' that he believes confer a property right on him"); *Dillow v. Va. Polytechnic Inst. & State Univ.*, No. 7:22cv280, 2023 WL 2320765, at *10–*11, (W.D. Va. Mar. 2, 2023) (same where the plaintiff only includes "bare-bones allegations of a 'contract' between himself and Virginia Tech—without any effort to define its scope or terms, much less how it relates to processes and procedures"); *cf. Alger*, 175 F. Supp. 3d at 657–58 (finding that the plaintiff sufficiently alleged that he had a property interest in his continued enrollment where the plaintiff described, cited, and attached specific

14

university policies and practices for student dismissal); Am. Compl., *Doe v. Alger*, No. 5:15cv35 (W.D. Va. July 17, 2015), ECF No. 30.

   *(2) Graduate assistantship for the spring 2021 semester pursuant to his contract with NSU:* Plaintiff also alleges that he has a property interest in his employment as a graduate assistant in the Program. Compl. ¶ 44, ECF No. 1. "In order to have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it—created, for example, by contract or state law." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 n.14 (4th Cir. 2006). "[T]he con-stitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990). "Rather, the property interest is more gen-erally in continued employment, and no deprivation exists so long as the employee receives 'payment of the full compensation due under the contract.'" *Id.* (quoting *Royster v. Bd. of Trustees*, 774 F.2d 618, 621 (4th Cir. 1985)). Here, Plaintiff cited to his employment contract with NSU as the basis of his property interest but failed to provide any detail on the terms of the employment contract. The existence of some employment contract and the fact that Plaintiff allegedly meets all requirements, in-cluding eligibility for enrollment and employment, are not sufficient to allege the ex-istence of a property interest in his employment as a graduate assistant in the Pro-gram. *See Davis v. Rao*, 583 F. App'x 113, 114 (4th Cir. 2014) (affirming district court finding that an untenured professor had no protected property interest based on the university's tenure review procedures); *Socol v. Albemarle Cnty. Sch. Bd.*, 399 F.

Supp. 3d 523, 536–37 (W.D. Va. 2019) (same where the employment policy was not sufficient to rebut the "strong presumption" of at-will employment in Virginia). Plaintiff's bare reference to his employment contract is not sufficient to state a property interest in his employment.

*(3) Ph.D. for which Plaintiff has completed all academic and application requirements:* Plaintiff next alleges that he has a property interest in receiving his Ph.D. after completing all academic and application requirements. The only authority that Plaintiff cites to in support of his claimed property interest in his Ph.D. is *Crook v. Baker*, 813 F.2d 88 (6th Cir. 1987). Resp. Opp'n at 14, ECF No. 14. However, *Crook* presented a different set of circumstances than this case—in *Crook*, the plaintiff had already received his degree and graduated from his master's program. *Crook v. Baker*, 584 F. Supp. 1531, 1534 (E.D. Mich. 1984), *vacated*, 813 F.2d 88 (6th Cir. 1987). The university sought to rescind the plaintiff's degree approximately three years later for fabricating data. *Id.* at 1550–54. The district court agreed with the plaintiff's contention that he acquired a lifetime property interest in his degree based on "the [university's] stated requirements for the degree, its certification, through its faculty, that plaintiff has satisfied those requirements, the vote of the Board of Regents to award the degree to plaintiff in 1977, and the conferral thereafter." *Id.* at 1554. These facts differ from Plaintiff's particular case where he has not yet received his degree.

With respect to Plaintiff's asserted property interest, some courts have found the existence of a property interest in a high school diploma where the individual has completed all the requirements for graduation. *Swany v. San Ramon Valley Unified*

*Sch. Dist.*, 720 F. Supp. 764, 774 (N.D. Cal. 1989) (noting that the plaintiff had a protected property interest in a high school diploma, which arose when he had fulfilled all of the school's graduation requirements). However, Plaintiff does not cite to any Virginia law or any other legal authority in support of his contention that there is a protected property interest in receiving his Ph.D. *See Swift v. Montagnino*, No. 01cv33162, 2002 WL 35646597, at *6 (E.D. La. Aug. 13, 2002) (stating that the plaintiff's alleged property interest failed to rise to the level of a legitimate claim of entitlement protected by the Due Process Clause because Louisiana law does not guarantee its citizens a university degree). Plaintiff's generalized references to NSU's policies, rules, and regulations are also not sufficient to adequately allege the existence of a protected property interest in his Ph.D. Even when taken in the light most favorable to Plaintiff, these bare allegations are factually insufficient to state a protected property interest.

*(4) Readmission and registration in NSU:* For the same reasons discussed in the section on Plaintiff's claimed property interest in continued enrollment at NSU, Plaintiff has failed to allege facts sufficient to show the existence of a property interest in readmission and registration at NSU.[3] Accordingly, Plaintiff does not meet the threshold requirement of alleging a protected property or liberty interest for a due process claim. For these reasons, Plaintiff failed to state a procedural due process

---

[3] Plaintiff acknowledges that this asserted property interest is "a variation of his continued-enrollment right" and addresses both property interests together. Resp. Opp'n at 13, ECF No. 14.

claim pursuant to 42 U.S.C. § 1983. Count I is **DISMISSED** with respect to all De-
fendants.[4]

### C.  Plaintiff failed to sufficiently allege any property interest in support of his substantive due process claim.

#### i.  Legal Standard

In addition to procedural due process, "[t]he Supreme Court has interpreted
[the Fourteenth Amendment Due Process] Clause to provide substantive rights
'which protects individual liberty against certain government actions regardless of
the fairness of the procedures used to implement them.'" *Callahan v. N.C. Dep't of
Pub. Safety*, 18 F.4th 142, 145 (4th Cir. 2021) (quoting *Collins v. City of Harker
Heights*, 503 U.S. 115, 125 (1992)). "[A] plaintiff asserting a § 1983 substantive due
process claim must allege both the deprivation of his life, liberty or property interest
by a state actor, and that the deprivation of this interest was 'arbitrary in the consti-
tutional sense.'" *Id.* (quoting *Collins*, 503 U.S. at 129). "A protected property interest
cannot be created by the Fourteenth Amendment itself, but rather must be created
or defined by an independent source." *Equity in Athletics, Inc.*, 639 F.3d at 109 (citing

---

[4] In Defendants' brief in support of the Motion to Dismiss, Defendants request the
Court to take judicial notice of Plaintiff's convictions for Fraud and Misuse of Visas,
Permits, and Other Documents, in violation of 18 U.S.C. § 1546(a) and False State-
ment in an Immigration Proceeding, in violation of 18 U.S.C. § 1015(a). Mem. Supp.
Mot. Dismiss at 10, ECF No. 14. Defendants also attached a letter from USCIS deny-
ing Plaintiff's first I-485 application (Ex. A) and a letter with USCIS's prima facie
determination for classification under the self-petitioning provisions of VAWA (Ex.
B). *Id.* at 10–11. Because the Court grants Defendants' Motion to Dismiss (ECF No.
12) on other grounds, the Court declines to address the judicial notice request at this
stage.

*Roth*, 408 U.S. at 577); *see also Siena Corp. v. Mayor and City Council of Rockville, Md.*, 873 F.3d 456, 461 (4th Cir. 2017).

     ii.    Analysis

For the same reasons discussed in Section III(B), Plaintiff failed to sufficiently allege any property interest in support of his substantive due process claim. As such, Count II is **DISMISSED** with respect to all Defendants.[5]

**D.    Plaintiff failed to sufficiently allege class of one discrimination or national origin discrimination.**

     i.    Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "[T]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics*, 639 F.3d at 108 (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). "[T]he Supreme Court has recognized the validity of class of one Equal Protection claims, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *King*

---

[5] Because Plaintiff failed to sufficiently allege his procedural and substantive due process claims, qualified immunity also bars Counts I and II against Defendant Harris in her personal capacity. *See Ridpath*, 447 F.3d at 307 ("Under the qualified immunity test, the initial question with respect to the due process claim is whether [the plaintiff] has sufficiently alleged the violation of a Fourteenth Amendment right.").

*v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (quoting *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) and *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (internal quotation marks omitted).

Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of . . . national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must "allege that Defendant[s] received federal financial assistance and engaged in intentional . . . discrimination." *Glenn v. Wells Fargo Bank, N.A.*, No. 15cv3058, 2017 WL 371956, at *15 (D. Md. 2017); *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *but see Farmer v. Ramsay*, 41 F. Supp. 2d 587, 592 (D. Md. 1999) (stating that "although the plaintiff must prove intent at trial, it need not be pled in the complaint"). "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).

###### ii.    Analysis

Plaintiff alleges two types of discrimination in his complaint: class of one discrimination (equal protection claim) and national origin discrimination (equal protection and Title VI claims). Compl. ¶¶ 77, 79–80, 91, ECF No. 1. The Court reviews each in turn.

First, with respect to Plaintiff's class of one discrimination claim, the Court finds that Plaintiff failed to allege sufficient facts to suggest that Defendants engaged

in class of one discrimination. "The Fourth Circuit has not had occasion to provide a clear standard as to how concretely and specifically a plaintiff must compare himself to others to state a class-of-one claim." *Williams v. Mitchell*, No. 2:22cv388, 2023 WL 4540559, at *9 (E.D. Va. July 13, 2023) (quoting *Foster v. U.S. Env't Prot. Agency*, No. 2:14cv16744, 2016 WL 4473453, at *8 (S.D.W. Va. Aug. 22, 2016)) (internal quotation marks omitted). However, the majority of circuit courts have found that a generalized pleading that does not specify other similarly situated parties is no longer sufficient to state a class of one claim under *Twombly* and *Iqbal*. *See id.*; *Foster*, 2016 WL 4473453, at *8 (noting holdings from the First, Second, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits in support). Here, Plaintiff's Complaint alleges in a conclusory manner that "Dr. [ ] Harris and NSU singled [Plaintiff] out and treated him differently than similarly situated individuals without any rational basis." Compl. ¶ 79, ECF No. 1. It does not identify the similarly situated individuals nor state any facts in support of their similarity to Plaintiff. "[B]ecause Plaintiff's Complaint merely parrot[s] the . . . language of the claim[ ] that he is pleading, and because Plaintiff fails to provide specific facts to plead these legal claims, either directly or on the basis of circumstantial evidence or reasonable inferences, Plaintiff has not satisfied the pleading standard under Rule 8 of the Federal Rules of Civil Procedure." *Williams*, 2023 WL 4540559, at *9 (internal quotation marks and citation omitted).

Second, Plaintiff raises national origin discrimination in the context of his equal protection claim and his Title VI claim. The Court finds that Plaintiff failed to adequately allege that he was discriminated against on the basis of national origin

with respect to both the Section 1983 equal protection claim and the Title VI claim. Plaintiff alleges in a conclusory manner that he was discriminated against on the basis of his status as a foreign national but fails to include any facts that suggest his national origin factored into Defendants' determination that Plaintiff did not have the requisite visa status to maintain his enrollment at NSU. Compl. ¶¶ 80, 91, ECF No. 1. These bare assertions do not meet the plausibility standard required to state a claim under Rule 12(b)(6). *See Gaskins v. Baltimore City Pub. Schs.*, No. 15cv2961, 2016 WL 192535, at *8 (D. Md. Jan. 15, 2016) (dismissing Title VI claim because the plaintiff made no allegation that she or anyone else suffered discrimination on the basis of race, color, or national origin); *Langadinos v. Appalachian Sch. of Law*, No. 1:05cv39, 2005 WL 2333460, *8 (W.D. Va. Sept. 25, 2005) (same because the plaintiff failed to allege facts indicating that the objectionable acts were due to his race, color, or national origin).

Additionally, discrimination based on citizenship status only qualifies as an equal protection violation or Title VI violation when "it has the purpose . . . of discriminating on the basis of national origin." *Espinoza*, 414 U.S. at 92–93 (finding that employer's policy of not hiring non-citizens, which foreclosed plaintiff—a Mexican citizen—from the job, was not national origin discrimination because 97% of applicants and 96% of employees were of Mexican ancestry); *see Pathria v. Univ. of Tex. Health Sci. Ctr.*, 531 F. App'x 454, 456 (5th Cir. 2013) (dismissing Title VI claim in part because citizenship is not a protected category under Title VI); *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 635–36 (S.D.N.Y. 2021) (same);

*see also Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003) ("It is equally clear that [Title VI] prohibits only intentional discrimination, not 'disparate impact' practices."). Here, Plaintiff's Complaint conflates his status as a "foreign national" with his national origin. Even if Defendants did in fact discriminate against Plaintiff because he is a foreign national, this type of discrimination does not violate the Equal Protection Clause or Title VI. Plaintiff's Complaint is devoid of any allegations that the discrimination based on his status as a foreign national served as a pretext for discrimination based on any national origin he identifies with. Because Plaintiff failed to sufficiently plead his equal protection or Title VI claims, Counts III and IV are **DISMISSED** with respect to all Defendants.[6]

### E.    Plaintiff shall have the opportunity to amend his complaint.

In the Response in Opposition, Plaintiff specifically requests leave to amend his Complaint to include additional allegations on Counts III and IV and in support of punitive damages should the Court find these claims insufficiently pled. Resp. Opp'n at 16–18, ECF No. 14. Federal Rule of Civil Procedure 15(a) provides that a party may amend their Complaint once as a matter of course within 21 days of Defendants' Motion to Dismiss (ECF No. 13) or, if after 21 days, with the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a). Plaintiff never filed a motion for leave to amend his complaint or a proposed amended complaint for the

---

[6] Because Plaintiff failed to state a Section 1983 equal protection claim, qualified immunity also bars Count III against Defendant Harris in her personal capacity. *See Ridpath*, 447 F.3d at 307.

Court's consideration. He merely included three sentences in his Response in Opposition requesting leave to amend his Complaint to add allegations with respect to Counts III and IV and punitive damages. Because Plaintiff did not seek leave to amend in a separate motion or provide a proposed amended complaint, it is within the Court's discretion to deny this request. See *U.S. ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (affirming the district court's denial of the plaintiff's request to amend complaint because the request was only made in the plaintiff's response to the defendant's motion to dismiss); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (same where the plaintiffs only sought leave to amend in their response to the defendant's motion to dismiss and in their objections to the magistrate judge's recommendation).

However, in the interests of justice, the Court shall give Plaintiff an opportunity to amend the Complaint (ECF No. 1) with respect to all counts. *See Rector and Visitors of George Mason Univ.*, 132 F. Supp. 3d at 733–34 (dismissing Title IX and equal protection claims due to failure to plead sufficient facts in support but allowing the plaintiff to amend his complaint if such facts exist); *Dillow*, 2023 WL 2320765, at *14 (same). Plaintiff shall have fourteen (14) days from the date of this Order to file an amended complaint should he choose to do so and should bear in mind the requirements of Federal Rule of Civil Procedure 11 in determining whether to file an amended complaint.

IV.     CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED**. Counts I, II, III, and IV of the Complaint (ECF No. 1) are **DISMISSED without prejudice**. If Plaintiff intends to amend his complaint, Plaintiff **SHALL** file the amended complaint within fourteen (14) days from the date of this Order. If Plaintiff does not file an amended complaint within the fourteen-day deadline, the Clerk is **DIRECTED** to enter a Final Judgment Order in favor of Defendants Visitors, NSU, and Dr. Harris. The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

         **IT IS SO ORDERED.**

                                                          /s/
                                            _____
                                                 Arenda L. Wright Allen
                                              United States District Judge

August 8, 2023
Norfolk, Virginia